Ok, everyone seems to be settled now. Help me with the pronunciation. Sebeckes. Sebeckes. Thank you. Whenever you're ready to proceed. Good morning. Peter Sebeckes for the appellant Ernest Ellis. Thankfully, this appeal has nothing to do with relative crystallinity because I could not render a definition of it. But it does have to do deal with what is somewhat a murky area of veterans benefits law, which is what exactly can be clear and unmistakable error and what cannot be clear and unmistakable error. In this case, we're talking about error in a final Board of Veterans Appeals decision. And my client, the veteran, argues that the BVA decision that is being challenged was clearly and unmistakably erroneous because the board failed to properly apply certain VA regulations that spoke to how evidence is weighed, particularly in the context of a claim for a psychiatric disability. Can I just, just to save some time here, I mean, I appreciate your argument with respect to the arguably or, you know, broad statements or at least subject to construction broad statements by the single judge non-presidential panel here. But at the bottom, it seems to me going back through the briefing and the record that the issues your client raised with respect to the violation of those regulations seem to my mind at least to be very fact-based to be the kind of weighing of evidence. So whereas the board might have been wrong if they really meant or the CAVC might have been wrong if it really meant that regulations at no time, no way, shape, or form irrespective of the argument can be a CUE. But the opposite is not true, which is that you can't, if you're raising subjects of fact-based, it could not be a subject of a CUE. Am I wrong about that? No, I think you're correct about that. But I think my client is arguing that given what the BVA found in its 1984 decision and in the CUE decision, which was on appeal to the Veterans Court, it was not simply a matter of how they weighed the evidence. It was a matter of there being no evidence that spoke to the veteran's disability at the point at which he asked for an increased rating. There was absolutely no evidence that was consistent with a 10% rating. The BVA, in its decision reviewing the challenge decision, dismissed appellant's argument saying, well, you're saying he wasn't given the benefit of the doubt? Well, he was. The BVA, in the decision you're challenging, resolved reasonable doubt in the veteran's favor and ascribed all of his symptoms to the service-connected psychiatric disability. If that's the case, this is not a matter of weighing evidence. It's a matter of was there any evidence to justify a 10% rating? And that's why I think I emphasized in the briefing the fact that it seems that the Veterans Court and the BVA, I respect my adversary's skill in her argument, but in her brief she said that the appellant is reading the regulation out of context. It seems to me that that's exactly what the two judges who found against the appellant at the Veterans Court and what the BVA has done. Even if we agree with you that there's a problem with the 2010 decision because they completely misstated the fact or that there's a problem with the Veterans Court decision because it's a misstatement of the law, what does that get you? If you go back and look at the 1984 decision, whether you like the result or not, it seems that they did consider all of the things that you wanted them to consider, whether they got the right conclusion or not. I think that simply because they itemize certain pieces of evidence without really having any substantive discussion of that evidence, that's one fundamental problem I have with the challenge BVA decision. Also, basically to me what the Veterans Court is doing is saying, here's the law, how we see it, and it makes it a very simple analysis. If you present a question that involves a factual determination, it's not going to be clear and unmistakable error because you're implicating how the evidence is weighed. Well, that's reading the subpart of the VA regulation out of context. In the case law, and I tried to make this clear in my briefing, in the case law it says clear and unmistakable error cannot be simply or merely a disagreement with how the evidence was weighed. That's what the regulation says. I'm sorry, that's what the case law says, which Congress had, when they passed the Revision Act, the Q Act, Congress had said we expect the regulations to be written in a manner that is consistent with prior case law on clear and unmistakable error. Well, I'm not arguing that the regulation per se is inconsistent with prior case law on clear and unmistakable error. What I'm arguing is that if you're going to take this one sentence from the regulation, I think it was D3 perhaps, if you're going to take that out of context and just when you address the argument that has been made by you, I mean the Veterans Court, if you're simply going to say that, well, those regulations have to do with weighing evidence or what you're really disagreeing with is how the evidence was weighed, that subclause is in the context of case law that the Veterans Court handed down since we have judicial review. The case law says you've got to do more. The Veterans Court seems to be saying if it involves facts and how they were weighed, we're not going to look at it. You're saying that under Q, you can look at the weighing of facts if it rises to the level of the standards and no reasonable mind could ever reach the conclusion they reached based on those facts? Right. If it's compelling. I think if you look at the joint appendix at page 5, which is the initial single judge decision, at the top of the page he recites the law. I'll just quote from the decision. Q is established when the following conditions have been met. First, the correct facts contained in or constructively contained in the record were not before the adjudicator. Two, statutory or regulatory provisions were incorrectly applied. Second, Q, the alleged error, must be undebatable, not merely a disagreement as to how the facts were weighed or evaluated. That's from the seminal case on Q, Russell versus Principia. When I read that, it doesn't mean to me that Q cannot involve how the facts were weighed. I think the court in Amberman had it right, your court. It's got to rise to that level of how could they have reached this conclusion. What appellants argued at the veterans court and at the board was in 1984, when this issue was before the board of veterans appeals, there was no evidence other than evidence from when this gentleman first came out of the service. That would support an evaluation of a rating that he had only a mild disability, psychiatric disability. Now, when the challenge BVA decision is issued, according to the BVA that reviewed the challenge, they granted my client the benefit of the doubt. And they ascribed every symptom to his service-connected disability. Well, there's my Q. I mean, those two things just do not add up. How can you have ascribed all the symptoms to his service-connected disability when every piece of evidence, except for a piece of evidence that's eight years old, says that he's severely impaired? He has significant impairment of his ability to engage in gainful employment. So, you know, it seems to me it's the veterans court and the board before it is simply wanting to avoid the argument. Well, let me just ask just a technical question. I don't want to cut too much into your rebuttal. But I know in the current opinions here from the CAVC and the board of appeals, there's an agreement that at least two statements that the board came up with are wrong and that weren't in the 84 report. But there was something in the record where the board said the September 82 VA also opined that the veteran was fully oriented and had a good memory and did not have any problems with delusions or hallucinations. I think that statement stands, right? It's the other two statements. So that was part of the record in 84 before the board? Yeah. I mean, his treating psychiatrist kind of was on the edge of saying, well, you know, he does seem to have some symptoms that might be called auditory hallucinations. But, you know, I don't think it really gets to that point. So I would say that's not a misstatement of the facts. Okay. Why don't we hear from the government and we'll save the remainder of their rebuttal. Ms. Hogan? Good morning, Your Honor. May I please report? I would just start by saying that it seems we're all in agreement that one critical element of Q is that to constitute Q, the error alleged must be undebatable. It must be one in which reasonable minds could not differ that there was an error made. In the board decision in 2010, pages 43 to 44, there was a factual finding by the board. Can you tell us the joint appendix number? Joint appendix 43 to 44. The veterans failed to show that the applicable statutory and regulatory provisions were incorrectly applied such that they involved undebatable error that would have led to materially different outcomes. In other words, there was a factual finding by the board that whatever errors were alleged didn't meet that element of Q. And so for that reason, we think that the veterans court decision here, the judgment was correct. And we can look at that one sentence. How can we read this opinion without at least being a little bit suspicious or quizzical given that, as the CAVC pointed out, there were two relatively important misstatements in the board's opinion with regard to the factual evidence, right? The board did find that there had been an error made in the reasons or basis requirement because there were these two misstatements of fact. If we all agree there were misstatements of fact in the board opinion, then how can we take as a given or take for granted their analysis with respect to the undebatable error? The first answer, I think, respectfully is, of course, that this court can't review errors of fact in the veterans court or in the board's decision so that this court doesn't review reasons or basis analyses for legal error. So I think the one answer is that the court simply has to accept the facts as they were found by the board. The second argument, the second point that would make… You're saying that in the 2010 queue, if they say, well, there couldn't have been a queue in 1984 because this and this were before the board. If those things weren't actually before the board, it's unreviewable? By this court. It's certainly reviewable by the veterans court. But then the veterans court looks at it and applies the wrong law. You concede that that's not the law. You try to say, well, maybe they didn't really mean that, what they said, but there were clearly two or three statements in which they clearly misstated the law. Did they not? I think there are two different findings by the veterans court. First is the finding that the board's decision that there was no queue was not arbitrary, capricious, or unsupported by law. We believe that should be affirmed. And then the second alternative argument that Mr. Ellis made before the veterans court was that there was inadequate reasons or bases for the 2010 board decision. And that the veterans court in that case here found that there were some misstatements of fact, but that those were harmless error. But they were harmless because you could never have queues in circumstances that the veterans court described, which is a misstatement of the law. Is it not? Well, that's not what the veterans court said, though. The veterans court did not say. How can, if you're making up facts, stating facts that are absolutely wrong, how does that come down to a disagreement over weighing the evidence? Well, certainly I think the court can find that, and the board can find that, again, I think we're talking about a very deferential standard of review in the queue area of law. No, I'm not talking about the queue area. I'm sorry. I know this is confusing. I'm back to what you called a second thing and a separate thing. I think your point to Judge O'Malley's question was, well, the reasons and bases thing is sort of a different animal than the queue thing. And I was talking about the reasons and bases analysis, and you kind of said, well, that's not reviewable. Well, the board got it wrong. The CABC didn't. We're not arguing they got it wrong. The CABC acknowledged that the board got it wrong. Right, and then the court goes on to say that the court holds that the board's error is non-prejudicial, which is on page 7, because the arguments for revision boil down to disagreements over how the board weighed the facts in 1984. Yeah, and I'm just asking you how something can boil down to a disagreement over weight when we're not talking about how somebody took two facts and put more weight on one than on the other. We're talking about where a whole school of facts were found to be absolutely incorrect. How is that a question of weight? Do you understand my problem? I do understand the court's concern. Again, I think that it's not a satisfactory answer, but it may not be a satisfactory answer to the court. But I think that to the extent that that's an error, that's not one this court can review. This court's limited to reviewing errors of law, questions of law that are presented by the Veterans Court's decisions. And the question presented by Mr. Ellis is whether there's been a misinterpretation of cue by the Veterans Court. So on that question of cue, what is the government's position with regard to these particular regulations that have been alleged? Is the government's position that there can never be a cue violation of those particular regulations because they're just intensively evidentiary-based, or is the government's position that there can be, this just isn't the case? Our position is that, by and large, there could be a by a cue finding, a finding of cue based upon an evidentiary error, one which would implicate these regulations. And one example might be if the original fact finder said, we find the evidence is exactly inequitably, so we're going to fine for the government. That would clearly be a misapplication of the reasonable doubt doctrine, and one which a later fact finder could come back and say, that was clearly erroneous, this should have been given to the claimants. But if it were an argument that, if the fact finder said, we find that the weight preponderates against the claimant, and the claimant comes back and says, no, you really should have weighed the evidence to find that it was an equipoise and reasonable doubt should have been given to the claimant, that wouldn't constitute cue, because that would boil down to an argument, a disagreement about the weighing of facts. What if there were an admission or acknowledgement that some of the facts considered were just wrong? That alone would not necessarily be sufficient for a fact finder to find that any error was undebatable and that would have manifestly changed the outcome of the case. Again, I think in this case, the board in its 2010 decision goes through a pretty comprehensive review of the facts and concludes that the conclusion that a 10% rating was warranted was a tenable conclusion. But you understand the reservations, and this is where we leap back and forth from the CUE to the other reasoned basis, because you're right, they found that, but they found that on the basis of what the CABC acknowledges were at least two major fact findings that were wrong, at least in the board's 2010 opinion. So it's kind of hard for you to defend the CUE issue, falling back on the board's findings, which are just wrong, right? Well, again, I think respectfully that the veteran's court affirmed the board's CUE finding, finding it was not arbitrary, capricious, or not in accordance with law. That's a finding that was based on the correct law, and to the extent that there were errors of fact, again, respectfully, that's not something that this court can review. Well, how do we know that? I mean, the statement is at least ambiguous, right? The CABC's comments with respect to what CUE can be and what it cannot be, right? We don't think it's inconsistent with how CUE law, I mean, yes, I think it is maybe perhaps ambiguous. It certainly does not say it can never be CUE. That would clearly be a statement of law that's incorrect, and certainly consistent with the statements on page 4 and 5 where the veteran's court does go through what CUE law is and correctly states the law. We think that that should lead the court to the conclusion that what the veteran's court said on page 6 of the joint appendix is simply a corollary to the normal rule that the mere weighing of evidence is never going to constitute CUE. But that's the mere weighing of evidence. That's not actually what they said. I mean, if that were what they said, then we'd be a little less uncomfortable with what they said is whenever you have anything to do with weighing of evidence, you can't have CUE. And that's not right. That's not what we said in Amberman, and that's not correct, because you can have a situation where the weighing of evidence is so manifestly inappropriate or wrong that you could have CUE. Respectfully, I think that's, again, what the court said is that the court is unpersuaded that the board's alleged misapplication of these regulations, which provide guidance on the weighing and evaluation of evidence, could result in CUE. It's the could that's a problem. It's the could that I understand gives the court some trouble. But again, I think if the court looks at the entire statement by the veteran's court, in which the veteran's court does go through what the correct standard for CUE is, and the statement that the court is unpersuaded certainly seems to suggest that the veteran's court in this case was reviewing this particular case, these particular allegations of violations of regulations, and reaching a conclusion that they didn't constitute CUE. And importantly, there's… It is problematic, though, because you're here, and you do a really nice job in your rhetoric of trying to say, well, they didn't really mean what they said. But the problem is we've got case law now out there from the veteran's court, and if we just let it stand on the assumption that we don't really think they meant what they said, what happens in the next case, where the next case there's an argument that anything to do with weighing of evidence could never constitute a CUE? And that's the implications of this opinion. So, again, I don't think this is anything inconsistent with what the veteran's court said in Fugo, what the veteran's court said in Russell, or this court's statement in Amberman, which simply recognized that if you do have a finding of CUE based upon an evidentiary error, then it's a CUE. Chances are that's going to be because there was some failure to properly apply a regulation that dealt with evaluation of evidence. We don't disagree with that statement, but that doesn't alter the normal three-step requirements for finding CUE. More problematic problem perhaps would have been to have the veteran's court said, we do find this being materially a different outcome, but because the weighing of evidence can never constitute a CUE, we did not hear a CUE claim. That would be a different case, but that's not the facts that are presented here. What does it mean that this decision says, designated for electronic publication only, pursuant to 30A, this action may not be cited as precedent? I mean, I know how our rules work with respect to non-precedential opinions and so forth. I'm not familiar with this rule here. My understanding is that it would work similarly to the way this court's rules regarding unpublished decisions. Can I ask you something as a clarification? I should probably know the answer, but did the board acknowledge some error in disregarding earlier available facts in its 2010 decision? Did it acknowledge any error in what it had done in 1984 and say, even acknowledging that error, those changing or correcting them would not have met the standard for manifest error? That is, it would not have clearly resulted in the contrary decision, or did it not even acknowledge that there had been some oversight in 1984? And maybe I want to clear up that the errors of the misstatements of facts that were alleged were alleged to be in the 2010 decision. So there was no allegation that there were any misstatements of facts in the 1984 decision. It was only when the 2010 board decision, in reviewing the 1984 decision, made some misstatements. I mean, that was my question too, but have you confirmed that or you just say there's no allegation? Is your assumption that the board, at least with respect to the two misstatements that are called out in the 2010 board opinion, that those were not misstatements? There were no similar misstatements in the 1984? I would be happy to confirm that with the court, but the fact that what the court was doing was considering Mr. Ellis' reasons or Basie's argument, which could only be based on the two misstatements. I guess what I was focusing on, there's a concern here about, and I think maybe this is even where you began, with the board's 2010 finding about how any grievance here, if it had merit and were corrected, would not have clearly changed the outcome back in 1984. And that essentially makes non-prejudicial any possible misstatement or overstatement that the CABC made in that crucial sentence that could result on persuasive sentence. And I think the concern here was maybe that non-prejudicial, any error is not manifest finding is itself tainted by some kind of error. And that's what I guess I'm trying to get a grip on, whether there is this kind of harmlessness basis that's not tainted. Right. I think I understand the court's point. And maybe that, I'm not being clear, but maybe that depends on whether there's any recognition of any deficiency, the alleged deficiency, in the 84 decision. Right. And if the court wants, I'd be happy to submit a clarifying short statement about that, because I think that wasn't an issue that we really addressed in our brief. But my understanding is that there's no error effect in this. Well, why don't you keep it to two pages and then submit it within five working business days, if that's reasonable. And then the other side will have five days to respond, not to exceed the same number of pages. So, satisfactory. Thank you, Your Honor. Thank you. It just seems like we're going around in a circle with, OK, we acknowledge that there were misstatements of fact, but according to the memorandum decision of the Veterans Court, that's harmless error because weighing of facts, a factual question can never rise to the level of q, which is, as you've recognized, a misstatement of law. So how can we rely on the Veterans Court finding that all these errors were harmless when Well, I think we're mixing apples and oranges, in fairness to Ms. Hogan, I think. Because when we're talking about the errors of the board, we're talking about the 2010 errors of the board. Whereas, with respect to the CUE analysis, we're focused on the 1984 decision, and there's been no indication, at least, that those factual errors infected or were indeed existing in the 1984 opinion. Am I right about that? I think the way you stated it, I can't disagree with it, but if the veteran is alleging CUE, saying that there was no evidence, contemporary evidence, in 1984 that justified a finding that he had a mild disability, especially when, in justifying the 1984 decision, the board in 2010 is recognizing that, well, they even said they were granting him the benefit of the doubt, and they were resolving the question of which of the two psychiatric disabilities, service-connected, non-service-connected, they're saying we are going to give you that, we're going to, the board in 1984 erred on your client's side because it ascribed all of his symptoms. Well, that is just unsupported. There's no piece of evidence that shows that somebody who's being given a medication that's normally given for people with psychosis and being described by his treating psychiatrist and by a psychologist who gives him various tests to see what his disability is. How can you say that, we're chasing our tail, it seems to me. If we're going to say it's harmless error, harmless error based on what standard? If the standard that the Veterans Court is applying is not correct, if the law is not that clear and unmistakable error can never be based on a misapplication of regulation dealing with the weighing of facts, then how can we feel any degree of confidence in that harmless error finding? I think we have the argument, we thank both counsel, the case is submitted. Thank you.